**WO**                                                                                                          JDN

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Lee Baker, ) | No. CV 07-0353-PHX-SMM (JRI) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Dora Schriro, et al., ) | |
| Defendants. ) | |

Plaintiff Daniel Lee Baker brought this civil rights action under 42 U.S.C. § 1983 against various officials of the Arizona Department of Corrections (ADC) and the Management and Training Corporation (MTC) (Doc. #16). Before the Court is a Motion to Dismiss Counts I-IV for failure to exhaust administrative remedies or, in the alternative, for failure to state a claim (Doc. #33). The parties fully briefed the motion (Doc. ##78, 87).[1]

The Court will grant the motion in part and deny it in part. Count IV will be dismissed as well as various claims within Counts I-III.

**I.   Background**

    **A.   First Amended Complaint**

Plaintiff's claims arose during his confinement in two different ADC facilities and the

---

[1] The Court issued the notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), which informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions. (See Doc. #47).

MTC prison in Kingman, Arizona.  Plaintiff entered the Arizona State Prison Complex (ASPC)-Lewis Stiner Unit in March 2005.  (Doc. #78 at 2 ¶ 2.)  He transferred to the MTC facility in May 2005 and was housed there until June 2006, at which time he moved to the ASPC-Eyman Cook Unit.  (Id.)  Plaintiff's First Amended Complaint sets forth 11 counts against 37 defendants.  (Doc. #16.)

Count I alleges that Plaintiff's Eighth Amendment rights were violated by overcrowded conditions of confinement, including overcrowding with dangerous inmates, at both the ADC and MTC facilities.  (Id. at 4.)  Plaintiff asserts that the conditions caused extreme hostility and excessive violence and that there were insufficient facilities for the number of inmates.  (Id. at 4-4C.)  The Court ordered ADC Defendants Schriro, Trujillo, McMacken, Toersbijns, and MTC Defendants MTC, Elliott, Yates, Malone, and Frawner to answer Count I.  (Doc. #15, Order dated June 7, 2007; see also Doc. #12, Report and Recommendation.)

Count II alleges a claim of failure to protect.  (Doc. #16 at 5.)  Plaintiff states that he was housed with known gang members and because Plaintiff was a not a gang member and did not associate with inmate predators, he was a target of these gang members who subjected him to violence and threats if he refused to participate in various illicit activities.  (Id. at 5-5B.)  Plaintiff alleges that his only recourse was to complain to staff and be placed in punitive detention for a time and then returned to the same environment.  Defendants Schriro and MTC were ordered to answer Count II.  (Doc. #15; see also Doc. #12.)

Count III also sets forth a claim of failure to protect.  (Doc. #16 at 6.)  Plaintiff alleges that a pervasive system existed of placing inmates, including Plaintiff, under the supervision or monitoring of other inmates, including gang members, predators, and seriously mentally ill inmates.  Plaintiff claims that this system resulted in coercive, retaliatory, and assaultive behaviors by those prisoners.  (Id. at 6A-6B.)  Defendants Trujillo, McMacken, Elliott, Yates, Malone, Frawner, and Toersbijns were ordered to respond to Count III.  (Doc. #15; see also Doc. #12.)

Count IV alleges that Defendants acted with deliberate indifference to Plaintiff's safety when they failed to protect him from a May 8, 2006 attack by other inmates at the MTC facility. (Doc. #16 at 7.) Plaintiff asserts that he was assaulted by five inmates who repeatedly struck him in the head, face, chest and kidneys, and repeatedly kicked him. Plaintiff claimed that he suffered lacerations to his head, face, and chest, and swelling. (Id. at 7-7A.) He further claims that the conditions alleged in Count III permitted the assault to occur. The Court ordered an answer to Count IV from Defendants Schriro, MTC, Elliott, Yates, Malone, and Frawner. (Doc. #15; see also Doc. #12.)

Count V alleges denial of access to the courts, but was dismissed by the Court for failure to state a claim. (Doc. #15; see also Doc. #12.) The Court also dismissed the remaining defendants. (See Doc. #12 at 8.) In a subsequent Screening Order the Court ordered responses to Count VI (retaliation), Count VII (access to the courts), Count IX (free exercise of religious), Count X (deprivation of property without due process), and Count XI (access to the courts). (Doc. #53, Report and Recommendation; Doc. #58, Order dated Oct. 17, 2007.) In light of these additional claims, the Court reinstated 11 of the previous dismissed defendants. (Doc. #53 at 10). Count VIII (improper mail processing) was dismissed for failure to state a claim. (Id.)

**B.   Motion to Dismiss**

This Order addresses the Motion to Dismiss filed by Defendants Schriro, McMacken, and Malone (Doc. #33), and joined by all of the MTC defendants (Doc. #34), Toersbijns (Doc. #45), and Pogue, Bullock, Hanley, Ruboyianes, Uehling, Waldron, and Clemente (Doc. #72) (collectively "Defendants"). The motion was filed prior to the Court's second Screening Order and therefore only addresses Counts I-IV.

Defendants move to dismiss Counts I-IV on the following grounds: (1) Plaintiff failed to exhaust available administrative remedies; (2) Plaintiff's pre-June 8, 2005 claims are barred by the statute of limitations; and (3) Plaintiff failed to allege the requisite physical

injury under § 1983. (Doc. #33.) In support of their motion, Defendants submit the affidavit of Aurora Aguilar, an ADC Hearing Officer. (Id., Ex. A, Aguilar Aff. ¶ 1.) Aguilar describes the ADC's four-tiered grievance system and the prison's policy of maintaining a log of all processed grievances and appeals. (Id. at ¶¶ 5-8.) She attests that a copy of the grievance system policy is available in the inmate resource library within each prison unit. (Id. at ¶ 4.) She further attests that her review of the ADC Central Office Grievance Appeal Log did not reveal any appeals filed by Plaintiff pertaining to his claims in Counts I-IV. (Id. at ¶¶ 9-10).

Plaintiff argues in response that he was not given the Inmate Handbook, nor was he aware of the ADC grievance policy or where to find the policy, until prison officials provided ADC Orientation upon his arrival at the MTC facility in June 2006. (Doc. #78 at 11, 6 ¶ 15.) Plaintiff states that by then, the 10-day timeframe in which to bring his complaints had expired and Department Order (DO) 802, which sets forth the grievance procedures, does not provide any exceptions for filing untimely grievances. (Doc. #16 at 4E.) He asserts that prison officials explained to him that he could not grieve issues related to where he would be housed or with whom he would be housed; specifically, he could not grieve the fact that he did not want to cohabitate with gang members and their affiliates. (Doc. #78 at 11.) Plaintiff asserts that DO 802 does not allow inmates to challenge a classification decision or place of confinement. (Doc. #16 at 4E.) Plaintiff contends that prison officials "closed the door to the [ADC] Grievance capabilities" and prevented him from satisfying the exhaustion requirements. (Doc. #78 at 11.)

Plaintiff further argues that regardless of the discovery of the grievance procedures, he "was not of sound mind to plead his case to prison officials verbally or written" because he was still recovering from injuries sustained in an April 2004 automobile accident. (Id.) He states that brain damage, neurological damage, and physical injuries rendered him unable to comprehend administrative or judicial regulations like the ADC grievance system. (Id. at

1   4 ¶ 10.) Plaintiff submits voluminous medical records to show that he received treatment for
2   these injuries at the relevant time, including weekly visits with a psychologist. (Id. at 11, Ex.
3   B.)

4   Plaintiff contends that despite his failure to file grievances, prison officials were aware
5   of the conditions and knew that housing him with violent and dangerous prisoners denied
6   him the "right to humane treatment and protection against deliberate indifference." (Id. at
7   4 ¶ 11.) He alleges that Defendants were indifferent to the ongoing violations and
8   maintained a "code of silence." (Id. at 12.) Plaintiff avers that he could not break that code
9   by filing grievances because the "monitoring" system required all Inmate Letters to be
10  screened by gang members before delivery to staff. (Id.) Thus, filing grievances would have
11  put him at risk of physical assault or death or made him subject to retaliation from prison
12  officials. (Id.)
13
14  Plaintiff alleges that these circumstances, along with his fragile mental and physical
15  condition and the obstacles he incurred when Defendants deprived him of his legal materials,
16  prevented him from utilizing the grievance system. (Id. at 13.) He also notes that the
17  grievance system does not provide monetary damages, which he seeks in this lawsuit. (Doc.
18  #16 at 4E.)

19  Regarding the statute of limitations, Plaintiff asserts that his health conditions and the
20  loss of his legal materials prevented him from discovering his constitutional claims until
21  2006. Thus, his constitutional claims are not time-barred. (Doc. #78 at 9). Plaintiff argues
22  that Defendants' lack-of-requisite-injury argument should fail because the Court already
23  determined that Plaintiff stated a valid claim under § 1983 for Counts I-IV in its Screening
24  Order, and further discovery will demonstrate the physical injury. (Id. at 14-15.)

25  In reply, Defendants respond to Plaintiff's claims that fear of reprisal by inmates or
26  staff deterred Plaintiff from using the grievance system. (Doc. #87.) Defendants argue that
27  correctional employees are subject to disciplinary action if they fail to comply with the ADC
28

- 5 -

policy or if they harass, punish, or discipline inmates for using the grievance system. (Id. at 3.) Defendants also note that copies of DO 802 are readily available for all inmates in the inmate library. (Id.)

## II.     Legal Standard

### A.     Exhaustion

Plaintiff must first exhaust "available" administrative remedies before bringing this action. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process. Booth v. Churner, 532 U.S. 731, 741 (2001).

Failure to exhaust is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 919-21 (2007). Defendants bear the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

### B.     Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint or any claim within it "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990); see also Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).

In determining whether the allegations of a complaint state a claim upon which relief may be granted, the Court must take the allegations of material fact as true and construe them in the light most favorable to the plaintiff. Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (*per curiam*). Pro se pleadings must be held to a less stringent standard than formal pleadings drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Ortez v. Washington County, 88 F.3d 804, 807 (9th Cir. 1996). The rule of liberal construction of pleadings is "particularly important in civil rights cases." Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

## III. Analysis

### A. Exhaustion

Plaintiff did not file any requests for administrative relief through the ADC grievance system. In his First Amended Complaint and his response memorandum, Plaintiff sets forth numerous defenses to the nonexhaustion claim: (1) the grievance system did not provide the remedy Plaintiff sought—monetary compensation; (2) Plaintiff did not need to provide prison officials with notice through the grievance system because they were already aware of the violations; (3) his mental and physical condition rendered him unable to file grievances; (4) the system was not made available until he received notice of it through Orientation and provision of the Inmate Handbook in June 2006; (5) by the time Plaintiff became aware of the grievance procedures, the 10-day window to file his complaint had expired and DO 802 does not provide exceptions for untimely grievances; (6) he would have been subject to danger, assaults, and threats or retaliation if he attempted to raise his claims.

#### *1. No Monetary Damages Remedy*

In Booth, the Supreme Court reasoned that in enacting the PLRA, "Congress meant to require procedural exhaustion regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible," noting that one exhausts processes, not forms of relief. 532 U.S. at 739. The Court held that an inmate must exhaust irrespective of the forms

- 7 -

of relief sought and offered through the administrative process, and specifically held that an inmate seeking only money damages must complete a prison administrative system that could provide some sort of relief but no money. Id. Plaintiff's argument that he was excused from exhaustion because the remedy he sought was unavailable therefore fails.

### 2. *Prison Officials Already Aware of Alleged Violations*

The primary purposes of the exhaustion requirement extend well beyond that of providing notice of possible legal action to potential defendants. See Jones, 127 S. Ct. at 923. Other benefits of exhaustion include allowing prison officials to address complaints prior to a lawsuit, reducing litigation when complaints can be resolved, and improving litigation that does occur with the preparation of a useful record. Id. (citing Woodford, 126 S. Ct. at 2378).

Plaintiff's failure to attempt exhaustion of his administrative remedies deprived prison officials of any opportunity to resolve the problem prior to litigation and it foreclosed any development of an administrative record that could have clarified the dispute. Regardless of whether Defendants were aware of Plaintiff's claims, Plaintiff was obligated to properly exhaust or, at the least, attempt to exhaust.

### 3. *Health Conditions Preventing Exhaustion*

There is little case law regarding whether mental or physical impairments excuse a prisoner's failure to properly grieve a claim through the prison's grievance system. The Fifth Circuit has held that administrative remedies are unavailable when a physical injury causes the untimely filing of a grievance and the grievance system rejects the inmate's subsequent attempt to exhaust based on the untimely grievance. Days v. Johnson, 322 F.3d 864, 867-68 (5th Cir. 2003).[2] The same court also held that a blind inmate was not excused from

---

[2] A subsequent unpublished case, Johnson v. Ford, 2008 WL 118365 (5th Cir. 2008), recognized an overruling of Days in light of the holding in Woodford; however, that case did not go to the specific ground cited to herein. Also, the District Court for the Eastern District of California expressly stated that it does not read Woodford as overruling Days. Macahilias v. Taylor, 2008 WL 220364, at *3 (E. D. Cal. Jan. 25, 2008).

- 8 -

exhausting administrative remedies. <u>Ferrington v. Louisiana Dep't of Corrs.</u>, 315 F.3d 529 (5th Cir. 2002). The Eastern District of California has concluded that a prisoner exhausted available remedies where his illness requiring hospitalization and the lingering effects of that illness were responsible for the prisoner's inability to file a timely grievance. <u>Macahilas</u>, 2008 WL 220364 at *3-4. In that case, the prisoner attempted to file grievances and appeals at every level; every filing was rejected as untimely. <u>Id.</u> at *4.

In those cases where injury or illness was deemed a defense to nonexhaustion, the plaintiffs attempted to use the grievance system, but their grievances were rejected as untimely. Here, Plaintiff concedes that he made no attempt to file any requests for administrative relief because the 10 days in which to file a grievance had expired. But he also contends that most of his claims were continuing; thus it is unclear whether the 10-day time-frame would have even applied to his claims. Nonetheless, in failing to attempt exhaustion, Plaintiff did not provide an opportunity for prison officials to address his complaints or to excuse the timeliness requirement in light of Plaintiff's health conditions.

The Court notes that during the time Plaintiff alleges he was mentally and physically unable to navigate the prison grievance system, Plaintiff was acting pro se in three criminal appeals and initiating three civil rights actions. (Doc. #78, Ex. 1, Pl. Aff. ¶¶ 21-22). He does not explain how his condition prevented him from filing grievances but did not interfere with his extensive criminal and civil legal proceedings. On this record, the Court cannot find that Plaintiff's mental or physical condition prevented him from using the prison grievance system.

### *4.     Unaware of Grievance System Until June 2006*

Plaintiff asserts that did not know of the prison grievance process until his transfer in June 2006. In his response memorandum, Plaintiff states that he did not receive Orientation until his arrival at MTC in June 2006. (Doc. #78 at 6, 15.) But in his affidavit, Plaintiff avers that he was transferred to MTC in May 2005, where he was housed until June 2006,

- 9 -

1 at which time he was transferred to the ASPC-Eyman Cook Unit. (Id., Ex. A, Pl. Aff. ¶¶ 10-
2 12.) Thus, Plaintiff appears to claim that he did not receive Orientation and information
3 about the grievance system until his arrival at the Eyman Cook Unit in 2006. He further
4 claims that until that time, he did not know where to find the ADC grievance policy. (Id. at
5 ¶ 15.)

6       Plaintiff's own evidence contradicts these assertions. Plaintiff's affidavit states that
7 upon his arrival at MTC in May 2005 he was denied access to the telephone system and so
8 "[he] had filed and exhausted the ADOC Grievance system on that issue." (Id. at ¶ 20.) He
9 further attests that during his stay at MTC, he exhausted his administrative remedies on his
10 claim that his chair was wrongfully confiscated. (Id. at ¶ 23.) Plaintiff also proffers copies
11 of Inmate Letters and grievances and hand-written letters to various officials. (Id., Ex. D.)
12 The Inmate Letter is the first step in ADC grievance procedures. (Id., Ex. C.) One letter,
13 dated May 8, 2006 and directed to the ADC Deputy Director, includes a follow-up notation
14 indicating that an Inmate Letter had been delivered to staff. (Id., Letter dated May 8, 2006.)
15 In an earlier letter to the Director of Office of Constituents, in which Plaintiff sought
16 assistance with civil rights and ADA claims, Plaintiff wrote "I have completely exhausted
17 my grievance process." (Id., Letter dated April 8, 2006 at 2.) Finally, despite his claim that
18 he did not know where to find copies of the prison grievance policy, Plaintiff's May 12, 2006
19 letter to the Health Services Administrator specifically states that "the library [ ] is
20 responsible for publishing all D.O. and D.I. [Director's Instruction] references, as well as
21 Institutional Orders . . . . " (Id., Letter dated May 12, 2006 at 4.)

22       This evidence reflects that Plaintiff had knowledge of the prison's grievance system,
23 knew where to find the policy, and filed grievances while he was housed at MTC, well before
24 his transfer to the Eyman Cook Unit. Therefore, his claim that the grievance process was
25 "unavailable" because he was unaware of it until June 2006 fails.

//

### 5. *Expiration of 10-Day Time-Frame*

As discussed above, because Plaintiff did not attempt to file any grievances concerning Counts I-IV outside of the 10-day time-frame provided by the grievance procedures, he did not give the grievance system an opportunity to either address or reject his complaints. Because "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance," the prisoner must participate in the system. Woodford, 126 S. Ct. at 2388. Plaintiff's speculation as to how prison officials may have responded does not excuse his obligation to use to the grievance procedures.

### 6. *Threats by Inmates or Staff*

The Eighth Circuit has held that if prison officials prevent or thwart a prisoner from using an administrative remedy, it is rendered "unavailable" and the court will deem that remedy exhausted. Lyon v. Vande Krol, 305 F.3d 806, 808-09 (8th Cir. 2002) (citing Foulk v. Charrier, 262 F.3d 687, 697-98 (8th Cir. 2001)); see also Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001). Similarly, the Second Circuit has found that "threats or other intimidation by prison officials may well deter a prisoner of 'ordinary firmness' from filing an internal grievance . . . ." Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004). The Court in Hemphill devised a multi-step approach for resolving whether remedies were rendered unavailable or whether a defendant's exhaustion defense was estopped by threats made to the plaintiff. Id. First, a court must determine if remedies existed and whether the defendants had forfeited or waived the defense of nonexhaustion. If remedies were available, a court is to "consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." Id. at 686. Under the Hemphill inquiry, the Court must determine if Plaintiff's allegations concerning the threatening environment justify his failure to file any grievances.

Plaintiff attests to the "hostile treatment by prison officials" at the Eyman Cook Unit

- 11 -

and identifies two officials—Uehling and Higgins—who allegedly threatened him with retaliation for filing grievances. (Doc. #78, Ex. A, Pl. Aff. ¶ 39.) He further attests to the details of the "monitoring" system within the Cook Unit that required his grievances to be inspected by the "head of my race" prior to filing. (Id. at ¶ 40.) Plaintiff avers that the same two prison officials encouraged and condoned this screening process imposed by gang inmates (Id.) Plaintiff avows that filing any grievances about this monitoring and housing situation would have put him at risk of assault, extortion, or retaliation. (Id. at ¶¶ 41-42.)

These detailed allegations go only to the failure to file grievances at the Eyman Cook Unit. Plaintiff alleges that the violations in Counts I-III occurred at the Lewis Stiner Unit, MTC, and the Eyman Cook Unit. (Doc. #16 at 4, 5, and 6.) There is no explanation why Plaintiff was unable to file grievances at the Lewis Stiner Unit or the MTC facility. He attests generally that from March 2005 to the present, he could "file administrative grievance and end up either dead, permanently disabled, or stuffed-away in some little tomb prison officials call rooms or cells for the dur[ation] of my prison sentence," or plead his case to the courts. (Doc. #78, Ex. A, Pl. Aff. ¶ 48.) But he provides no information explaining his failure to file prior to 2006. As stated above, the evidence shows that Plaintiff was aware of and used the grievance system at MTC for other issues. Without specific allegations describing his attempts or obstruction of his attempts to grieve at the Stiner Unit and MTC, Plaintiff cannot justify his failure to initiate the grievance procedures at those two facilities for any of his counts.

As to the Eyman Cook Unit, however, Plaintiff's allegations are specific and plausible; thus, they may justify the failure to comply with the administrative grievance procedures. In response to the claims that Uehling and Higgins threatened Plaintiff for his use of the grievance system, Defendants point to the provision in DO 802 stating that inmates who use the grievance system shall not be harassed or punished and that employees who fail to comply with this order may be subject to disciplinary action. (Doc. #87 at 3, citing DO

802 § 802.05, 1.2, 1.2.1.) But the DO 802 policy, standing alone, fails to rebut Plaintiff's direct allegations that Uehling and Higgins acted contrary to policy and threatened to retaliate against him. Defendants do not address and therefore do not dispute the claim that Plaintiff was subject to a monitoring system that required all Inmate Letters to be screened by gang inmates before submission to prison officials. Nor is there any evidence, such as affidavits from Uehling and Higgins, that these officials did not know about the monitoring system or threaten Plaintiff. See Brown, 422 F.3d at 937 (relevant evidence that an administrative remedy was available includes documentary or testimonial evidence from prison officials). The Court finds that an individual of ordinary firmness would be intimidated from pursing grievance procedures in the face of threats of retaliation and reprisal from both officials and gang inmates.

On this record, Defendants fail to carry their burden of establishing that the grievance system was, in fact, "available" to Plaintiff at the ASPC-Eyman Cook Unit. See id. at 926. The Motion to Dismiss will be denied as to those claims stemming from Plaintiff's confinement in the Cook Unit. But the Motion will be granted on those claims within Counts I-III that stem from Plaintiff's confinement in the ASPC-Lewis Stiner Unit and the MTC facility. Because Count IV relates to an incident that occurred only at MTC, that count will be dismissed.

### B.    Statute of Limitations

Defendants move to dismiss all of Plaintiff's claims that accrued prior to June 8, 2005, on the ground that they are barred by the applicable two-year statute of limitations (Doc. #33 at 6). The only remaining claims from Counts I-IV are the allegations related to Plaintiff's confinement at the ASPC-Eyman Cook Unit set forth in Counts I-III. Plaintiff was not transferred to the Cook Unit until June 2006. Therefore, none of his remaining claims are subject to the statute of limitations.

//

### C.  **Physical Injury**

Defendants' final argument for dismissal is that Plaintiff failed to allege the requisite injury for an action under § 1983. (Doc. #33 at 11-12.) They contend that Plaintiff's claims for mental or emotional distress damages must be dismissed. Defendants only argue this ground for Counts I-III and, as discussed above, this argument now goes only to those claims arising at the Eyman Cook Unit.

In Counts I-III, Plaintiff alleges violations under the Eighth Amendment (Doc. #16 at 4, 5, & 6). An Eighth Amendment claim requires proof of a sufficiently serious deprivation and a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994). In contrast, "physical injury" is a term of art particular to 42 U.S.C. § 1997e(e), which provides that a prisoner may not bring a civil action for mental or emotional injury without a prior showing of "physical injury." In Oliver v. Keller, the Ninth Circuit determined that even absent physical injury, the prisoner was entitled to seek compensatory, nominal, and punitive damages premised on violations of his Fourteenth Amendment rights. 289 F.3d 623, 629-30 (9th Cir. 2002). Plaintiff's Request for Relief specifically seeks compensatory, nominal, and punitive damages for violations of his constitutional rights. (Doc. #16 at 15.) To the extent that Plaintiff has actionable claims for damages based on violations of his Eighth Amendment rights, his claim is not barred by § 1997e(e). Thus, Plaintiff's failure to demonstrate a physical injury does not nullify his § 1983 claims.

However, Plaintiff's failure to demonstrate a physical injury does defeat any claim for mental or emotional injury. In each of his counts, Plaintiff sets forth the identical injury:

> 1. Great and severe mental anguish and distress. 2. Long and continuing pain and suffering mental and physically. 3. Emotional and psychological injuries requiring current and future medicare care and treatment by specialist (Doc. #16 at 4, 5, & 6).

Plaintiff does not supplement his vague claim of "suffering physically" in his response memorandum; rather, he argues that the physical injury element will be proven in discovery. (Doc. #78 at 15.) Indeed, he argues that he suffered severe physical injuries *prior* to his

- 14 -

imprisonment and that the conditions to which he was subjected in prison caused further physiological and psychological injuries. (Id. at 16). These allegations fail to demonstrate a physical injury sufficient to maintain a civil action for mental and emotional injury; the respective claims within Counts I-III will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED:**

(1) Defendants' Motion to Dismiss (Doc. #33) is **granted** in part and **denied** in part as follows:

> (a) the motion is **granted** as to those claims within Counts I-III arising out of confinement at the ASPC-Lewis Stiner Unit and the MTC prison facility;
>
> (b) the motion is **granted** as to Count IV;
>
> (c) the motion is **granted** as to those claims in Counts I-III for mental and emotional injury;
>
> (d) the motion is otherwise **denied**.

(2) The Clerk of Court shall dismiss Count IV.

(3) The following claims remain:

> (a) the Eighth Amendment claims in Counts I-III arising from Plaintiff's confinement in the ASPC-Eyman Cook Unit; and
>
> (b) Counts VI-VII and IX-XI.

DATED this 4th day of March, 2008.

Stephen M. McNamee
United States District Judge