WO                                                                                          **JWB**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Daniel Lee Baker, | No. CV 07-0353-PHX-SMM (JRI) |
| Plaintiff, | **ORDER** |
| vs. | |
| Dora Schriro, et al., | |
| Defendants. | |

Plaintiff Daniel Lee Baker brought this civil rights actions under 42 U.S.C. § 1983 against various officials of the Arizona Department of Corrections (ADOC) and the Management and Training Corporation (MTC) (Doc. # 16). Before the Court are three Motions to Dismiss: (1) Defendant Toersbijns's Motion to Dismiss Count VII of the First Amended Complaint for failure to exhaust administrative remedies or, in the alternative, for failure to state a claim (Doc. # 60);[1] (2) Defendants Clemente and Waldron's Motion to Dismiss Counts IX and X for failure to exhaust administrative remedies or, in the alternative, for failure to state a claim (Doc. # 88); and (3) Defendant Dependable Personnel, Inc.'s Motion to Dismiss for failure to state a claim (Doc. # 105). The motions are fully briefed.[2]

---

[1] Defendants Pogue, Bullock, Hanley, Rubiyianes, Uehling, Waldron, and Clemente have joined this motion (Doc. # 72).

[2] The Court issued notices required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), which informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendants' contentions (Doc. # 63, 92, 108).

The Court will grant in part and deny in part Toersbijns' motion, deny Waldron and Clemente's motion, and deny Dependable's motion.

## I. Background

### A. First Amended Complaint

Plaintiff's claims arose during his confinement in two different ADOC facilities and the MTC prison in Kingman, Arizona. Plaintiff entered the Arizona State Prison Complex (ASPC)-Lewis Stiner Unit in March 2005 (Doc. # 60 at 2 ¶ 1). He was transferred to the MTC facility in May 2005 and was housed there until June 2006, at which time he moved to the ASPC-Eyman Cook Unit (id. ¶ 2). In his First Amended Complaint, Plaintiff set forth 11 counts against 37 defendants (Doc. # 16).

In Count I Plaintiff alleged that his Eighth Amendment rights were violated by overcrowded conditions of confinement, including overcrowding with dangerous inmates, at both the ADOC and MTC facilities (id. at 4). He asserted that the conditions caused extreme hostility and excessive violence and that there were insufficient facilities for the number of inmates (id. at 4-4C). The Court ordered ADOC Defendants Schriro, Trujillo, McMacken, Toersbijns, and MTC Defendants MTC, Elliott, Yates, Malone, and Frawner to answer Count I (Doc. # 12).

In Count II Plaintiff alleged a claim of failure to protect (Doc. # 16 at 5). Plaintiff stated that he was housed with known gang members and because Plaintiff was a not a gang member and did not associate with inmate predators, he was a target of these gang members who subjected him to violence and threats if he refused to participate in various illicit activities (id. at 5-5B). He alleged that his only recourse was to complain to staff and be placed in punitive detention for a time and then returned to the same environment. Schriro and MTC were ordered to answer Count II (Doc. #12).

Count III also set forth a claim of failure to protect (Doc. #16 at 6). Plaintiff alleged that there existed a pervasive system of placing inmates, including Plaintiff, under the supervision or monitoring of other inmates, including gang members, predators, and seriously mentally ill inmates. He claimed that this system resulted in coercive, retaliatory, and

assaultive behaviors by those prisoners (id. at 6A-6B). Trujillo, McMacken, and Elliott, Yates, Malone, Frawner, and Toersbijns were order to respond to Count III (Doc. # 12).

In Count IV, Plaintiff alleged that Defendants were deliberately indifferent to his safety when they failed to protect him from an attack by other inmates on May 8, 2006, at the MTC facility (Doc. # 16 at 7). He stated that for about fifteen minutes he was assaulted by five inmates, who repeatedly struck him in the head, face, chest and kidneys, and repeatedly kicked him. Plaintiff claimed that he suffered lacerations to his head, face, and chest, and swelling (id. at 7-7A). He further claimed that the conditions alleged in Count III permitted the assault to occur. The Court ordered an answer to Count IV from Schriro, MTC, Elliott, Yates, Malone, and Frawner (Doc. # 12).

Count V (denial of access to the courts) was dismissed for failure to state a claim (id.). The Court also dismissed the remaining defendants (id. at 8). Counts VI-XI were not addressed in this initial Screening Order. In a subsequent Screening Order the Court ordered responses to Counts VI-VII and IX-XI and dismissed Count VIII (improper mail processing) for failure to state a claim (Doc. # 53). In light of these additional claims, the Court reinstated 11 of the previous dismissed defendants (id. at 10).[3]

In Count VI Plaintiff alleged that he was transferred from a prison facility operated by MTC to the ASPC in retaliation for filing grievances (Doc. # 16 at 9). He claimed that this retaliatory transfer caused delays in his pending legal cases, destruction of property, and severe emotional anguish (id.). The Court ordered an answer to Count VI from MTC (Doc. # 53).

In Count VII Plaintiff claimed that his right of access to the courts was violated when he was incarcerated at both MTC and the ASPC-Eyman Cook Unit (Doc. # 16 at 10-10F). Specifically, Plaintiff claimed that at MTC, he was hindered in processing his criminal appeals and civil rights complaints due to the failure of mail room officials at MTC to

---

[3] Defendants Pogue, Bullock, Hanley, Uehling, Waldron, Clemente, Ruboyones, ASPC-Eyman Corrections Officer John Doe, Sedillo, and Dependable Personnel, Inc. (Doc. # 53 at 10).

- 3 -

1  properly process Plaintiff's legal mail (id. at 10B).  At the Cook Unit, Plaintiff alleged
2  various Defendants denied Plaintiff his legal file box, ultimately destroying it, resulting in
3  his inability to pursue his criminal appeals and civil rights claims (id. at 10C).  Further,
4  Plaintiff alleged that Cook Unit Librarian Ruboyianes denied Plaintiff access to the prison
5  law library; Cook Unit officials have precluded Plaintiff from possessing more than seven
6  books; and personnel in the Cook Unit and Eyman Complex mailrooms have ignored
7  Plaintiff's instructions in mailing packages, resulting in excess expenditures for postage.  The
8  Court ordered Toerbijns, Pogue, Bullock, Hanley, Uehling, Waldron, Clemente, Ruboyianes,
9  and ASPC-Eyman Corrections Officer John Doe to answer this claim (Doc. # 53 at 6).

10  In Count IX, Plaintiff asserted that he has been denied his right to the free exercise of
11  religion (Doc. # 16 at 12).  He claimed Defendants Waldron and Clemente destroyed
12  Plaintiff's religious materials without any legitimate penological objective.  The Court
13  ordered Waldron and Clemente to answer Count IX (Doc. # 53 at 7).

14  In Count X, Plaintiff alleged that his due process rights were violated by the
15  destruction of his legal research materials by Waldron and Clemente (Doc. # 16 at 13).
16  Plaintiff further alleged that he repeatedly attempted to grieve this issue to no avail.  The
17  Court required Waldron and Clemente to answer Count X (Doc. # 53 at 9).

18  And in Count XI, Plaintiff alleged that he was denied access to the courts at the
19  ASPC-Lewis Stiner Unit (Doc. # 16 at 14). Specifically, Plaintiff claimed that Sedillo denied
20  Plaintiff assistance in preparing his criminal appeals, petitions for post-conviction relief, and
21  civil rights complaint (id. at 14A).  Further, Plaintiff alleged that the law library at MTC did
22  not possess adequate legal materials to assist him in preparing his various appeals, petitions,
23  and complaints.  The Court required Sedillo, MTC, and Dependable Personnel to answer
24  Count XI (Doc. # 53 at 10).

25  Defendants Schriro, McMacken, and Malone filed a Motion to Dismiss Counts I-IV
26  of the First Amended Complaint (Doc. # 33).  The motion was joined by all of the MTC
27  defendants (Doc. # 34), Toersbijns (Doc. # 45), and Pogue, Bullock, Hanley, Ruboyianes,
28  Uehling, Waldron, and Clemente (Doc. # 72).  The motion was granted in part and denied

in part. Counts I-III arising out of confinement at the ASPC-Lewis Stiner Unit and the MTC prison facility were dismissed, along with Count IV. Further, the motion was granted as to those claims in Counts I-III for mental and emotional injury (Doc. # 99).

This Order addresses (1) Defendant Toersbijns's Motion to Dismiss Count VII (Doc. # 60), joined by Defendants Pogue, Bullock, Hanley, Rubiyianes, Uehling, Waldron, and Clemente (Doc. # 72); (2) Defendants Clemente and Waldron's Motion to Dismiss Counts IX and X; and (3) Defendant Dependable Personnel, Inc.'s Motion to Dismiss for failure to state a claim (Doc. # 105).

## II.    Legal Standard

### A.    Exhaustion

Plaintiff must first exhaust "available" administrative remedies before bringing this action. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 126 S. Ct. 2378, 2384 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense. Jones v. Bock, 127 S. Ct. 910, 919-21 (2007). Defendants bear the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted).

### B.    Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. North Star Int'l v. Arizona Corp. Comm'n, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal of the complaint or any claim within it "can be based on the lack of a cognizable legal theory or the

absence of sufficient facts alleged under a cognizable legal theory." <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir. 1990); <u>see also</u> <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 534 (9th Cir. 1984).

In determining whether the allegations of a complaint state a claim upon which relief may be granted, the Court must take the allegations of material fact as true and construe them in the light most favorable to the plaintiff. <u>Barnett v. Centoni</u>, 31 F.3d 813, 816 (9th Cir. 1994) (*per curiam*). Pro se pleadings must be held to a less stringent standard than formal pleadings drafted by lawyers. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>Ortez v. Washington County</u>, 88 F.3d 804, 807 (9th Cir. 1996). The rule of liberal construction of pleadings is "particularly important in civil rights cases." <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1261 (9th Cir. 1992).

**III.    Motion to Dismiss Count VII**

    **A.    Parties' Contentions**

Defendants move to dismiss Count VII on the grounds that (1) Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a) and (2) Plaintiff has not suffered the requisite physical injury pursuant to 42 U.S.C. §1997e(e) (Doc. # 60).

In support of their motion, Defendants submit the affidavit of Cheryl Dossett, an ADOC Hearing Officer (<u>id.</u>, Ex. A, Dossett Aff. ¶ 1). Dossett describes the ADOC's four-tiered grievance system and the prison's policy of maintaining a log of all processed grievances and appeals (<u>id.</u> ¶¶ 5-8). She attests that a copy of the grievance system policy is available in the inmate resource library within each prison unit (<u>id.</u> ¶ 4). She further attests that she reviewed the ADOC Central Office Grievance Appeal Log for any final grievance appeals filed by Plaintiff pertaining to his claims in Count VII but found none (<u>id.</u> ¶¶ 10-11).

In his response Plaintiff contends that he fully exhausted the claims presented in Count VII and has attached copies of his grievances and grievance appeals as proof. He argues that Toersbijns "intercepted" his grievance appeal to Schriro after he deposited it in the Cook Unit's mail room for delivery (Doc. # 75 at 10). Plaintiff further contends that he cannot be responsible for what happens to his grievances after they are sent for delivery.

1 Finally, Plaintiff contends he has suffered the requisite injury under § 1997e(e) because of
2 his inability to present his claims to the courts (id. at 12).

3 In reply, Defendants claim that Plaintiff failed to properly exhaust the claims
4 presented in Count VII. Specifically, Defendants contend that he did not submit his
5 grievances and appeals within the ADOC's established timeframes (Doc. # 77).

**B.     Analysis**

*1.     Exhaustion*

Defendants have presented inconsistent arguments on exhaustion. In their motion, Defendants argue that Plaintiff failed to file a final grievance appeal to the ADOC's Central Office as to the allegations in Count VII (Doc. # 60 at 8). Plaintiff submitted evidence contradicting that argument—a copy of a grievance appeal to ADOC Director Schriro at the Central Office that specifically addresses the destruction of his property (Doc. # 75, Ex. F, Attach. 4). Consequently, in reply, Defendants change their argument; they now contend that Plaintiff failed to file his grievance appeals within the requisite time frames established by ADOC policy, warranting dismissal of Count VII (Doc. # 77).[4]

The Court finds that Defendants have not met their burden to establish the absence of exhaustion as to Count VII. Plaintiff has submitted copies of inmate letters reflecting several attempts to resolve the destruction of his property upon transfer to the Cook Unit (Doc. # 75, Exs. A-D, F). These letters show that Plaintiff did not wait until after his property was destroyed to challenge its classification as contraband, as Defendants suggest. Rather, as early as June 16, 2006, Plaintiff attempted to resolve the issues with his property (id., Ex. A). Plaintiff also has submitted a response to two inmate letters he sent on July 10, 2006, which tells Plaintiff to "exercise patience" while his property issues are discussed with another officer. Plaintiff was informed that he would not be spoken to about this issue until a

---

[4] This argument was raised for the first time in a reply memorandum, thereby depriving Plaintiff of an opportunity to respond. See Cedano-Viera v. Ashcroft, 324 F.3d 1062, 1066 n. 5 (9th Cir. 2003) (declining to consider an issue raised for the first time in a reply brief). But because the Court finds that Plaintiff was reliably informed that no further administrative remedy was available, this argument is irrelevant.

- 7 -

resolution is reached (id., Ex. C). Plaintiff followed up again on August 25, 2006 and September 8, 2006, requesting the status of his property (id., Ex. D). It appears Plaintiff never received responses to his August and September inmate letters. Plaintiff then received notice on October 19, 2006, that his property was destroyed (Doc. # 75, Ex. F, Attach. 1). It was at this point that Plaintiff continued the grievance process.

Defendants' contention that Plaintiff only initiated the grievance process after his property was destroyed is patently incorrect. As Defendants must acknowledge, the grievance process begins when an inmate attempts to informally resolve an issue by submitting an inmate letter (Doc. # 60, Ex. A). Here, that is precisely what Plaintiff did when he submitted two inmate letters on July 10, 2006 (Doc. # 75, Ex. C).[5] More important, however, is the response Plaintiff received to his inmate letters. He was told to exercise patience and wait for a decision as to what was contraband and what was not. He was also explicitly informed that he would not be contacted until a decision on his property had been reached (id.). Based on this representation, Plaintiff had no further administrative remedy. Brown, 422 F.3d at 935 (a prisoner need not press on to exhaust further levels of review once he has received all "available remedies at an intermediate level of review or been reliably informed by a prison administrator that no remedies are available"). Consequently, Plaintiff did not file a grievance until after he received notice that his property was destroyed because he was explicitly told he would be contacted when a decision had been made on the classification of his property. There is nothing in the record that would indicate Plaintiff received any communication regarding his property until he received the property destruction notice on October 19, 2006 (Doc. # 75, Ex. E). As a result, it is apparent that the ADOC has been afforded the "opportunity to address complaints internally before allowing the initiation of a federal case." Brown, 422 F.3d at 936 (quoting Porter, 534 U.S. at 525). The Court

---

[5] To the extent that Defendants contend that Plaintiff's first inmate letter was not timely submitted, the Court finds that argument waived because Plaintiff received a response to that inmate letter on its merits. Trenton v. Arizona Dept. of Corrections, 2008 WL 169642 at *4 (D. Ariz. January 14, 2008).

- 8 -

finds that Defendants have not met their burden to demonstrate the absence of exhaustion as to Count VII.

### *2.  Physical Injury*

Defendants' second argument for dismissal is that Plaintiff failed to allege the requisite injury for an action under § 1983 (Doc. # 60 at 8-9). They contend that Plaintiff's claims for mental or emotional distress damages must be dismissed.

In Count VII, Plaintiff alleges his right of access to the courts has been violated, which requires a plaintiff to establish "actual prejudice" in pursuing contemplated or existing litigation. Lewis v. Casey, 518 U.S. 343, 346 (1996). In contrast, "physical injury" is a term of art particular to 42 U.S.C. § 1997e(e), which provides that a prisoner may not bring a civil action for mental or emotional injury without a prior showing of "physical injury." In Oliver v. Keller, the Ninth Circuit determined that even absent physical injury, the prisoner was entitled to seek compensatory, nominal, and punitive damages premised on violations of his Fourteenth Amendment rights. 289 F.3d 263, 629-30 (9th Cir. 2002). In his Request for Relief, Plaintiff specifically sought compensatory, nominal, and punitive damages for violations of his constitutional rights (Doc. #16 at 15). To the extent that Plaintiff has actionable claims for damages based on violations of his constitutional rights, his claim is not barred by § 1997e(e). Thus, Plaintiff's failure to demonstrate a physical injury does not nullify his § 1983 claims.

But it does defeat any request for mental or emotional injury. In Count VII, Plaintiff sets forth the following injury:

> 1. Delayed access to the courts. 2. Monetary loss. 3. Great and severe mental anguish and distress. 4. Family hardships and financial burdens. 5. Loss of legal documents (originals) for criminal appeals. 6. Denied access to courts. 7. Denied, rejected, dismissed 3 criminal appeals and 3 civil rights complaints. (Doc. #16 at 10).

In his response to Defendants' motion, Plaintiff does not allege that he has suffered a physical injury as a result of the allegations in Count VII. Plaintiff's allegations fail to demonstrate a physical injury sufficient to maintain a civil action for mental and emotional injury; the respective request within Count VII will be dismissed.

## IV. Motion to Dismiss Counts IX and X

### A. Parties' Contentions

Waldron and Clemente seek dismissal of Counts IX and X on the grounds that Plaintiff failed to exhaust administrative remedies and Plaintiff has an adequate post-deprivation remedy available to him to address the destruction of his property (Doc. # 88). In support of their motion, Waldron and Clemente rely on the materials submitted with Defendants' Motion to Dismiss Count VII (Doc. # 60).

In response, Plaintiff alleges that he did fully exhaust the ADOC's grievance procedure, and submits copies of his grievances and grievance appeals (Doc. # 97). As for Waldron and Clemente's claim that the availability of an adequate post-deprivation remedy requires dismissal of Counts IX and X, Plaintiff claims that this argument was addressed on screening and the Court found that because Plaintiff alleged that the destruction of his property was *with authorization*, his claims are not foreclosed by the existence of a post-deprivation remedy.

Waldron and Clemente did not file a reply.

### B. Analysis

#### *1. Exhaustion*

The religious and legal research materials at issue in Counts IX and X were confiscated upon Plaintiff's transfer to the Cook Unit in June 2006 along with the materials articulated in Count VII (Doc. # 16 at 12-13). Indeed, these materials were specifically identified as being destroyed on October 19, 2006 (Doc. # 75, Ex. F, Attach. 2). Because Plaintiff was instructed to be patient while his property was being classified, he had no other available administrative remedy to grieve the loss of his language tapes and religious materials. Consequently, for the same reasons identified as to Count VII, the Court finds that Defendants have not met their burden to demonstrate the absence of exhaustion as to Counts IX and X.

///

///

### *2.     Post-Deprivation Remedy*

Waldron and Clemente next claim that Counts IX and X must be dismissed because Plaintiff has an adequate post-deprivation remedy available to him to challenge the destruction of his property. But this was explicitly addressed in the Court's Screening Order (Doc. # 53 at 8-9). Defendants' arguments are, thus, nothing more than a request for reconsideration.

Motions for reconsideration should be granted only in rare circumstances. Defenders of Wildlife v. Browner, 909 F. Supp. 1342, 1351 (D. Ariz. 1995). Mere disagreement with a previous order is an insufficient basis for reconsideration. See Leong v. Hilton Hotels Corp., 689 F. Supp. 1572, 1573 (D. Haw. 1988). Nor is reconsideration to be used to ask the court to rethink what it has already thought through. United States v. Rezzonico, 32 F. Supp.2d 1112, 1116 (D. Ariz. 1998). Reconsideration is only appropriate if the district court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." School Dist. No. 1J, Multnomah County v. ACandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993). "No motion for reconsideration shall repeat in any manner any oral or written argument made in support of or in opposition to the original motion." Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, Inc., 215 F.R.D. 581, 586 (D. Ariz. 2003).

Nothing in Defendants' motion compels the Court to reconsider its prior ruling. Defendants' Motion to Dismiss Counts IX and X will be denied.

### V.     **Motion to Dismiss Dependable Personnel, Inc.**

#### A.     **Parties' Contentions**

Dependable Personnel, Inc. (Dependable) moves for dismissal on the basis that it is an improper party. Dependable contends that it was named in Plaintiff's First Amended Complaint only as the supervisor of Defendant Sedillo, who allegedly failed to render paralegal services to Plaintiff (Doc. # 105 at 1). Dependable claims that because it has never employed Sedillo, provided paralegal services to the ADOC Stiner Blue Unit or the MTC, or provided paralegal services to Plaintiff, it must be dismissed (id.). In support of its

1  motion, Dependable provides the affidavit of Judy Warren, an officer of Dependable (Doc.
2  # 105, Ex. A). She attests that Dependable never employed Defendant Sedillo, never
3  provided paralegal services to the ADOC's Stiner Blue Unit or to the MTC at Kingman, and
4  never provided any services to the Plaintiff (Doc. # 105, Ex. A ¶¶ 5-7). Dependable further
5  claims that a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is the
6  appropriate means of presenting this argument.

7  Plaintiff responds that he has seen a contract that purports to verify Sedillo's
8  employment with Dependable. He contends, however, that he was unable to produce a copy
9  of the contract and will attempt to obtain it through discovery (Doc. # 134).

10  In reply, Dependable argues that their motion should be treated as a summary
11  judgment motion because the Court has been presented with "matters outside the pleadings"
12  (Doc. # 135). Dependable further argues that, even construing their motion as one for
13  summary judgment, Plaintiff still cannot prevail because his assertions constitute
14  inadmissible hearsay. Finally, Dependable requests that discovery be limited in this case
15  (id.).

### B. Analysis

17  The Court declines to convert the pending motion to dismiss to a summary judgment
18  motion pursuant to Rule 56. Dependable's motion does not comply with Local Rule of Civil
19  Procedure 56.1, which requires a separate statement of facts. Further, the Court notes that
20  Dependable voluntarily filed a 12(b)(6) motion to dismiss that relied on materials outside the
21  pleadings. It cannot now decide to convert the motion to meet its own needs, particularly
22  when Plaintiff has not been given the requisite notice pursuant to Rand v. Rowland, 154 F.3d
23  952, 962 (9th Cir. 1998). More importantly, the Court notes that Plaintiff has contended that
24  he intends to secure evidence through discovery that substantiates his claim that Dependable
25  was the employer of Defendant Sedillo. The Court will not convert this motion to a summary
26  judgment motion without first giving Plaintiff an opportunity to take some discovery. Texas
27  Partners v. Conrock Co., 685 F.2d 1116, 1119 (9th Cir. 1982) (citing Timberlane Lumber Co.
28  v. Bank of America, 549 F.2d 597, 602 (9th Cir. 1976) ("'Putting plaintiffs to the test without

ample opportunity for discovery is particularly disfavored.'"). Dependable may make a motion to limit discovery after a scheduling order has been issued. Consequently, Dependable's motion to dismiss will be denied.

**IT IS ORDERED:**

(1) Defendant Toersbijns's Motion to Dismiss Count VII (Doc. # 60) is **granted** in part and **denied** in part as follows:

    (a) the motion is **granted** as to those claims in Counts VII for mental and emotional injury;

    (b) the motion is otherwise **denied**.

(2) Defendants Clemente and Waldron's Motion to Dismiss Counts IX and X (doc. # 88) is **denied**.

(3) Defendant Dependable Personnel, Inc.'s Motion to Dismiss (Doc. # 105) is **denied**.

(4) The following claims remain:

    (a) the Eighth Amendment claims in Counts I-III arising from Plaintiff's confinement in the ASPC-Eyman Cook Unit; and

    (b) Counts VI-VII and IX-XI.

DATED this 20th day of August, 2008.

Stephen M. McNamee
United States District Judge